**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 09-cv-02421-BNB

RAYMOND MARTINEZ,

      Applicant,

v.

ARISTEDES ZAVARAS, Executive Director, Colorado Department of Corrections, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

**ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS**

---

Blackburn, J.

      This matter is before me on Applicant Raymond Martinez's Application for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") [#1][1].  Respondents answered the

Application (Docket No. 14) and Applicant filed a traverse (Docket No. 24).  As Applicant is

proceeding *pro se,* I must construe his pleadings liberally and hold him to a "less stringent

standard." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) (citing *Haines v. Kerner,* 404

U.S. 519, 520-21 (1972)).   After reviewing the pertinent portions of the record in this case

including the Application, the answer, the traverse, and the state court record, I conclude that

the Application should be denied.

**I.      Background**

      The state appellate court summarized the facts leading to Applicant's conviction as

follows:

---

[1]"[#1]" is an example of the convention I use to identify the docket number assigned to a specific
paper by the court's electronic case filing and management system (CM/ECF). I use this convention
throughout this order.

1

> According to the People's evidence, defendant was wanted on a warrant for escape. Defendant emerged from a house police officers were watching, and the officers approached him. During the ensuing chase, defendant displayed a weapon, and he was shot by an officer. A cocaine pipe, 8.5 ounces of cocaine, and $3,698.28 in cash were found on his person.

*People v. Martinez*, 03CA1307 at 2 (Colo. App. Sept. 15, 2005) (unpublished opinion) (Answer at Ex. A).

On May 23, 2003, Applicant was found guilty by a jury of first degree assault on a peace officer, possession of cocaine with intent to distribute, and possession of cocaine in Case No. 02CR4290 in the District Court of Denver County, Colorado. On May 24, 2003, after a bench trial, Applicant was convicted of four habitual criminal counts. The state trial court sentenced him to two concurrent 64-year terms for the assault and the intent to distribute convictions and to a 24-year term for the possession conviction.

Applicant filed a direct appeal of his conviction to the Colorado Court of Appeals. On September 15, 2005, the Colorado Court of Appeals affirmed the judgment in part, vacated in part, and remanded the case with directions for the trial court to vacate the conviction and sentence for possession of a controlled substance. *See People v. Martinez*, 03CA1307 (Colo. App. Sept. 15, 2005) (unpublished opinion). Applicant petitioned for certiorari review, which the Colorado Supreme Court denied on January 17, 2006.

On February 22, 2006, the trial court vacated Applicant's conviction and 24-year sentence for possession, and issued an amended mittimus.

On June 1, 2006, Applicant filed a post-conviction motion for reconsideration of his sentence, which the trial court denied on July 20, 2006. Applicant did not file an appeal.

On November 22, 2006, Applicant filed a second motion for post-conviction relief, which the trial court denied on November 14, 2007. Applicant appealed the decision, and his appeal was dismissed by the appellate court on March 20, 2009, for Applicant's failure to file an opening brief.

On October 13, 2009, Applicant filed an application for a writ of habeas corpus in this court, asserting five claims for relief: (1) that his Sixth Amendment right to counsel was violated when the trial court denied his requests to dismiss the public defender and appoint private counsel; (2) that he was entitled to a jury trial on the habitual criminal counts; (3) that he was unfairly prejudiced by admission of a photograph of a digital scale and by having to wear a taser unit at trial; (4) that his right to be free from double jeopardy was violated because he was convicted and sentenced for both the greater offense of possession with intent to distribute cocaine and the lesser offense of possession of cocaine; and (5) that his constitutional rights were violated because he received ineffective assistance of trial counsel.

On October 15, 2009, United States magistrate judge Boyd N. Boland ordered the Respondents to file a pre-answer response limited to addressing the issues of timeliness and/or exhaustion of state court remedies.  Respondents filed their pre-answer response on October 28, 2009.  In the pre-answer response, Respondents argued that Applicant had failed to exhaust several of his claims in state court, and that these claims were procedurally defaulted. After receiving an extension of time, Applicant filed a reply on December 9, 2009.

On February 17, 2010, the Honorable Zita L. Weinshienk, a Senior United States District Judge, entered an order dismissing Applicant's fourth claim as moot and his fifth claim as procedurally defaulted.  Nonetheless, finding that Applicant's remaining claims (Claims One, Two and Three)  had been exhausted in the state courts, she ordered the claims drawn to a district judge and to a magistrate judge.

## II.    Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254, it

must decide whether the Applicant is in custody in violation of the Constitution or laws or treaties of the United States.  The court does not review a judgment, but the lawfulness of the Applicant's custody *simpliciter*."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).  The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Accordingly, based on denial of certiorari review by the Colorado Supreme Court in Applicant's case, habeas review in this Court is concerned with the proceeding in the Colorado Court of Appeals which was the final substantive proceeding in the state appellate review process.

Because Applicant filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir.1999)).   Under the AEDPA, a district court may only consider a habeas petition when the Applicant argues that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The grounds for granting a writ of habeas corpus are very limited: "a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1)-(2); *see also Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000) (citation omitted).

A state court decision is "contrary to" clearly established Federal law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of

4

facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent.'" *Price v. Vincent,* 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)).  A state court decision involves an "unreasonable application" of clearly established Federal law when "'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the Applicant's case.'" *Lockyer v. Andrade,* 538 U.S. 63, 75 (2005) (quoting *Williams,* 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . . The state court's application of clearly established law must be objectively unreasonable." *Id.* (citing *Williams,* 529 U.S. at 409-10, 412).  A "'federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Id.* (quoting *Williams,* 529 U.S. at 411). Finally, when analyzing a petition, all determinations of factual issues by the state court are presumed to be correct and the Applicant has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it."  *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

III.    **Discussion**

Claims One, Two and Three are the only claims remaining at issue in this action.


A.    **Claim One**

In his first claim, Applicant asserts that his Sixth Amendment right to counsel was violated when the trial court denied his requests to dismiss the public defender and appoint private counsel.  Applicant asserts that he had a conflict of interest with the public defender, and

they experienced a complete breakdown in communication, but the trial court failed to make the "requisite inquiries" into these allegations.  Application at 15-18.  In addressing this claim, the appellate court concluded:

> Defendant first contends the trial court erred by conducting an inadequate inquiry into his request for substitute counsel and in refusing to appoint substitute counsel, even though he had established good cause.  We disagree.
>
> An indigent defendant is not entitled to counsel of his choice, but only to effective appointed counsel.  *People v. Jenkins*, 83 P.3d 1122 (Colo. App. 2003).  When an indigent defendant requests appointment of new counsel, the trial court must inquire into the defendant's reasons to determine whether good cause exists to substitute counsel.  *People v. Smith*, 77 P.3d 751 (Colo. App. 2003).
>
> The court must appoint new counsel only when defendant "establishes good cause, such as a conflict of interest or a complete breakdown of communication."  *People v. Jenkins, supra*, 83 P.3d at 1126.  A complete breakdown in communication exists when the attorney-client relationship has deteriorated to the point where counsel is unable to give effective aid in the fair presentation of a defense.  *People v. Schultheis*, 638 P.2d 8 (Colo. 1981).
>
> A trial court's decision to deny an indigent defendant's request for substitution of counsel is review for abuse of discretion.  *People v. Garcia*, 64 P.3d 857 (Colo. App. 2002).
>
> Here, defendant filed a written motion for substitute counsel that was addressed at the pretrial conference, when defendant orally raised several concerns about his attorney's performance.  The court reviewed the motion and allowed defendant to explain his concerns.  The court then denied the motion, finding nothing in the motion or defendant's explanation to show that defendant was receiving inadequate representation.
>
> We reject defendant's argument that the trial court conducted an insufficient inquiry in response to his concerns about counsel.  The court invited defendant to express his concerns, did not limit his statement, commented on its assessment of defense counsel, and inquired of the prosecutor concerning counsel's performance.  A more detailed, formulaic inquiry is required only where the defendant is considering self-representation.  *See, e.g., People v. Arguello*, 772 P.2d 87 (Colo. 1989).  Here, defendant neither sought to represent himself nor was forced to do so.
>
> We reject defendant's argument that his complaints established good cause for substitution of counsel.
>
> Defendant asserted that due to the complexity of his case, additional discovery and pretrial investigation were required.  Defendant specifically asserted the need for medical and firearms experts. However, defendant offers

no explanation of how such experts would have been relevant to any defense, nor can we discern any possible relevancy. *Cf. Davis v. People*, 871 P.2d 769 (Colo. 1994) (Whether to call a particular witness, including an expert witness, is a tactical decision within the discretion of the trial counsel.); *People v. Bradley*, 25 P.3d 1271 (Colo. App. 2001) (Where expert testimony would have been of questionable benefit or would not have been supported by the evidence, failure to call the expert does not establish ineffective assistance of counsel.).

Otherwise, defendant did not specify what additional discovery or pretrial investigation allegedly was necessary. *Cf. People v. Isham*, 923 P.2d 190 (Colo. App. 1995) (absent showing of willing witness and substance of likely testimony, defendant cannot demonstrate that additional investigation would have prompted a different plea).

Moreover, the record shows that defense counsel went to the scene of the crime with the prosecutor and requested discovery.

Defendant next asserted that his counsel would not discuss the case with him, failed to respond to his requests, and sometimes laughed at him, all of which he argues amounted to a complete breakdown in communication. However, the court noted its familiarity with counsel's experience, opined that counsel was competent, and said that counsel had worked the case appropriately. *See People v. Jenkins, supra* (trial court properly denied defendant's request for substitute counsel based solely on its assessment of defense counsel's general expertise and zeal); *People v. Apodaca*, 998 P.2d 25 (Colo. App. 1999) (trial court need only have reasonable basis for concluding that attorney-client relationship has not deteriorated to the point where counsel is unable to render effective assistance).

Defendant also expressed discontent that no plea bargain had been reached. However, the record shows that the prosecutor offered a disposition, which included dropping the habitual criminal charges, but defendant refused the plea even after being advised he faced a sixty-four-year sentence if he proceeded to trial.

Defendant further complained that his counsel and the prosecutor talked like friends, which he asserted prevented him from asking counsel to do certain things for him. The trial court stated that defendant was just observing a professional relationship between the public defender's and district attorney's office.

Accordingly, we discern no basis in the record for concluding that the trial court abused its discretion in denying defendant's motion for substitute counsel.

*People v. Martinez*, 03CA1307 at 4-6.

To warrant a substitution of counsel under federal law, a defendant "'must show good

cause, such as a conflict of interest, a complete breakdown of communication or an

irreconcilable conflict which leads to an apparently unjust verdict.'" *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987) (§ 2255 action) (citing *McKee v. Harris*, 649 F.2d 927, 931 (2nd Cir. 1981)); *see also United States v. Johnson*, 961 F.2d 1488, 1490 (10th Cir. 1992) (motion to withdraw on basis that defendant believed his attorney was intimidated by the court and could not continue to act zealously in his defense denied because defendant did not show a conflict of interest, a breakdown in communication, or an irreconcilable conflict).  However, here is no absolute right to counsel of one's choice.  *See United States v. Peister*, 631 F.2d 658, 661 (10th Cir. 1980).

With respect to Applicant's claim of a conflict of interest, a criminal defendant has a Sixth Amendment right to conflict-free representation.  *See Smith v. Massey*, 235 F.3d 1259, 1265 (10th Cir. 2000) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).  In order to prevail on a claim that an attorney was ineffective because of a conflict of interest, a habeas applicant must show both that his trial attorney actively represented conflicting interests and that the conflict of interest adversely affected his attorney's performance.  *See Cuyler*, 446 U.S. at 348.  Where the defendant makes a timely objection pointing out a conflict of interest, prejudice is presumed if the trial court fails to make an adequate inquiry into the situation and take appropriate steps. *Selsor v. Kaiser*, 22 F.3d 1029, 1032-33 (10th Cir. 1994) (citing *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978)).  However, the mere possibility of a conflict of interest "is insufficient to impugn a criminal conviction."  *Cuyler*, 446 U.S. at 350.

In this case, the record fails to demonstrate that Applicant's trial counsel actively represented conflicting interests.  *Cuyler*, 446 U.S. at 350.  Applicant vaguely asserts that counsel was "not acting in [his] best interests" and that he did not trust counsel.  Application at 16.  These conclusory allegations, which are devoid of any supporting factual allegations, do not demonstrate a conflict of interest.  Applicant also asserts that he had "a conflict of personality with counsel and conflict as to trial strategy . . . counsel refused, or neglected, to talk to and call

8

witnesses that [Applicant] wanted involved in his defense." Application at 15-17. However, Applicant does not identify the witnesses that he wanted his counsel to contact, nor does he state the purpose of their testimony. In addition, "[p]ersonality conflicts are not conflicts of interest." *Hale v. Gibson*, 227 F.3d 1298, 1313 (10th Cir. 2000) (citing *Morris v. Slappy*, 461 U.S. 1, 13 (1983)). The mere fact that Applicant and his counsel disagreed on trial strategy does not demonstrate a conflict of interest. Here, Applicant complains that the trial court failed to "inquire about the specifics related to . . .conflict of interest," and yet Applicant has failed to provide to this Court any specifics which would demonstrate a conflict of interest. Application at 16. Applicant's vague and conclusory allegations fail to establish that his counsel actively represented conflicting interests and that the conflict of interest adversely affected his counsel's performance. *See Cuyler*, 446 U.S. at 348.

Second, with respect to Applicant's claim regarding a breakdown in communication, "a complete breakdown in communication between an attorney and client may give rise to a presumption of ineffectiveness." *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000). To prove a complete breakdown in communication, a habeas applicant needs to demonstrate that there was a severe and pervasive conflict with his attorney, or evidence of minimal contact with the attorney rendering meaningful communication impossible. *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002). In addition, Tenth Circuit precedent directs the habeas court to examine: (1) whether the petitioner made a timely motion to request new counsel; (2) whether the trial court adequately inquired into the matter; (3) whether the conflict between the petitioner and his attorney had resulted in a total lack of communication; and (4) whether the petitioner had substantially and unjustifiably contributed to the breakdown in communication. *See Romero*, 215 F.3d at 1113. To be entitled to habeas relief, the "breakdown in communication . . . cannot be the result of a defendant's unjustifiable reaction to the circumstances of his situation." *Id.* at 1114.

9

Here, Applicant asserts that counsel refused to visit or communicate with him, that counsel laughed at him when he asked questions, and that he felt intimidated by counsel. Application at 17-18.  However, Applicant fails to show that his disagreements with counsel created a complete breakdown in communication.  Instead, the evidence supports the conclusion that Applicant and trial counsel maintained adequate communication.

As required by *Romero*, 215 F.3d at 1113, the trial court twice inquired into the reasons for Applicant's request for substitution of counsel.  On May 19, 2003, after allowing Applicant to state his concerns regarding counsel, the trial judge noted that Applicant's counsel had appeared before her "many times", he was "extremely competent" and that, in her opinion, "he has probably worked up [Applicant's] case in a way that he thinks is appropriate."  Trial Court Transcript, Vol. 3, p. 19.  On May 22, 2003, Applicant reiterated his dissatisfaction with counsel, but also admitted that counsel had visited him at least four times, maybe more, in order to discuss the case.  Trial Court Transcript, Vol. 5, p. 267.  In response, the trial court noted there was "nothing in [counsel's] performance . . . that would suggest that he was anything other than competent."  *Id.* at 270.  On each occasion, the trial judge allowed Applicant to present his concerns, but found that trial counsel was competent and able to provide adequate representation.  *Id.*  Applicant's responses to the trial court do not establish a complete breakdown of communication, only that Applicant and trial counsel disagreed about trial strategy and how to proceed with the case.  *Id.*  However, "[t]he Sixth Amendment provides no right to counsel blindly following defendant's instructions."  *Padilla*, 819 F.2d at 956 (citing *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir. 1985)).

In this case, the mere fact that Applicant did not get along with his attorney does not, standing alone, establish a complete breakdown in communication.  There is simply no evidence in the record demonstrating that any animosity between Applicant and his trial counsel resulted in such deterioration of their attorney-client relationship that it jeopardized Applicant's

10

right to effective assistance of counsel.  Moreover, competent representation is what the Sixth Amendment guarantees; it does not guarantee a meaningful relationship with counsel.  *Morris*, 461 U.S. at 14-15.

After reviewing the record, I find that the Colorado Court of Appeals applied the appropriate factors and did not reach an unreasonable conclusion.  Accordingly, I find that the conclusion of the Colorado Court of Appeals'that the trial court did not improperly deny Applicant's motion for substitute counsel is not an unreasonable application of Supreme Court precedent, nor an unreasonable determination in light of the facts presented.  Therefore, Applicant is not entitled to habeas relief on this claim.

### B.     Claim Two

In his second claim, Applicant asserts that the state trial court erred because the fact of his habitual offender convictions were not proven to a jury beyond a reasonable doubt. Applicant argues that his sentence is unconstitutional under the standards set forth by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004).  Application at 6.

First, I note that the applicability and continued vitality of Supreme Court precedent is a pure question of law.  *See, e.g., United States v. Barbosa*, 271 F.3d 438, 452 (3rd Cir. 2001); *United States v. Rogers*, 228 F.3d 1318, 1321 (11th Cir. 2000), *abrogated on other grounds by United States v. Sanchez*, 269 F.3d 1250 (11th Cir. 2001).  As such, the Application may be granted in this case only if the adjudication of Applicant's claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d)(1).  Because the claim asserted by Applicant is purely a question of law, there is no basis for analysis of whether the state court's decision was an unreasonable determination of the facts in light of the evidence presented pursuant to 28 U.S.C. § 2254(d)(2).

11

The primary holding of *Apprendi* was that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (emphasis provided); *see also Jones v. United States*, 526 U.S. 227, 249 (1999) (recognizing that "unlike virtually any other consideration used to enlarge the possible penalty for an offense . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees"). In *Blakely*, the Supreme Court clarified "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 296. Therefore, under these Supreme Court holdings, it is permissible for a state court trial judge to make a factual finding that a defendant has been previously convicted. *See Apprendi*, 530 U.S. at 490.

The Colorado Court of Appeals rejected Applicant's *Apprendi/Blakely* claim because Applicant's sentence was enhanced as a result of his prior convictions. *See People v. Martinez*, 03CA1307 at 12. This conclusion is neither contrary to nor an unreasonable application of federal law, which explicitly excludes the fact of a prior conviction from the rule in *Apprendi*. *See Apprendi*, 530 U.S. at 490; *see also United States v. Moore*, 401 F.3d 1220, 1225 (10th Cir. 2005) (holding that *Apprendi*'s exception for prior convictions subsumes inquiries into subsidiary issues, such as whether a given conviction constitutes a "violent felony"); *see also United States v. Burgin*, 388 F.3d 177 (6th Cir. 2004) (whether defendant's prior convictions exist and were committed on separate occasions comes within *Apprendi's* exception for a prior conviction). Therefore, Applicant's second claim lacks merit and Applicant is not entitled to federal habeas relief on this claim.

### C.    Claim Three

In his third claim, Applicant asserts that he was unfairly prejudiced by (1) the admission of a photograph of a digital scale; and (2) being forced to wear a taser unit during trial. Application at 23-27.

1.      Photograph of Digital Scale

Applicant asserts that a photograph of a digital scale was erroneously admitted at trial because "the scale's connection to Mr. Martinez was/is tenuous at best."  Application at 25.  He argues that "the scale, while relevant to some element of the crime, is not relevant to the question of whether Mr. Martinez committed the crime because the scale belonged to someone other than Mr. Martinez."  *Id.*

In addressing this claim, the appellate court concluded:

Defendant next contends the trial court erred in admitting into evidence a scale found inside the house from which he emerged and a photograph of the scale. According to defendant, this evidence was irrelevant because the house had multiple occupants and no evidence specifically connected him to the scale, the probative value of which was substantially outweighed by the danger of unfair prejudice.  We disagree.

Evidence must be relevant to be admissible.  *Medina v. People*, 114 P.3d 845 (Colo. 2005).  Evidence is relevant if it tends to make the existence of a fact more or less probable.  CRE 401.

Even relevant evidence may be excluded, "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403.  However, the Colorado Rules of Evidence favor admissibility, *People v. Agado*, 964 P.2d 565 (Colo. App. 1998), and an appellate court must afford evidence the maximum probative value as well as the minimum unfair prejudice that could reasonably be expected.  *Masters v. People*, 58 P.3d 979 (Colo. 2002).

The trial court enjoys broad discretion when ruling upon the admissibility of evidence.  *Fendley v. People*, 107 P.3d 1122, 1126 (Colo. App. 2004).  Such a ruling is reviewed for abuse of discretion, *People v. Welsh*, 80 P.3d 296 (Colo. 2003), which exists only where the ruling was manifestly arbitrary, unreasonable, or unfair.  *Fendley v. People, supra.*

"[A]n item of real evidence which is circumstantially connected with the perpetrator, or with the victim, or in some manner with the crime, is sufficient to establish its relevancy or materiality for the purpose of admitting it."  *People v. Bedwell*, 181 Colo. 20, 23, 506 P.2d 365, 366 (1973) (tire iron admitted into evidence to prove aggravated robbery based solely on circumstantial evidence that it was used in the crime).  Cases dealing with admissibility of contraband found in areas under the control of multiple persons look to other circumstantial evidence of drug activity as creating an inference of knowing possession of the contraband by one of the occupants. *See, e.g., People v. Stark*, 691 P.2d 334 (Colo. 1984); *Feltes v. People*, 178 Colo. 409, 498 P.2d 1128 (1972).

13

Here, although the house from which defendant emerged was occupied by other persons, we agree with the trial court's holding that the scale was relevant to support the charge of possession with the intent to distribute. The lack of evidence linking defendant to the house is offset by evidence that he engaged in distribution of cocaine: when defendant was arrested he was in possession of cocaine, drug paraphernalia, a gun, and large amounts of cash.

Defendant also argues that any probative value of the scale was substantially outweighed by the danger of unfair prejudice and confusion of the issues because its admission misled the jury to conclude that he used the scale to distribute drugs. We are not persuaded.

Evidence is unfairly prejudicial only if it has an "undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror." *Masters v. People, supra*, 58 P.3d at 1001 (quoting *People v. Dist. Court*, 785 P2d 141, 147 (Colo. 1990)).

Defendant does not explain how the scale, apart from the other evidence of his drug activities, would "substantially outweigh the legitimate probative value of the evidence." *People v. James*, 117 P.3d 91, 94 (Colo. App. 2004). The scale does not suggest a decision based on "sympathy, hatred, contempt, retribution, or horror." Rather, the scale, along with other evidence, permits a reasonable inference that defendant distributed drugs.

Accordingly, we conclude the trial court did not err in admitting into evidence the scale and photo thereof.

*People v. Martinez*, 03CA1307 at 6-10.

Federal courts do not grant habeas relief for errors of state law. *See Estelle*, 502 U.S. at 67. This is because "[f]ederal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Thornburg v. Mullin*, 422 F.3d 1113, 1128-29 (10th Cir. 2005). As such, Applicant's constitutional challenge to the admission of this evidence is governed by the general principle that "the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief" only when "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair . . . ." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991); *see also Welch v. Sirmons*, 451 F.3d 675, 692 (10th Cir. 2006). "Inquiry into fundamental fairness requires examination of the entire proceedings." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (citation omitted)). Further, "because

14

a fundamental fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted).   In conducting its fundamental fairness analysis, the habeas court is not to "second guess a state court's application or interpretation of state law . . . unless such application or interpretation violates federal law."  *Bowser v. Boggs*, 20 F.3d 1060, 1065 (10th Cir. 1994).

Even if the state court error rises to the level of a constitutional violation, this court must then conduct its own harmless error analysis pursuant to *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), to determine whether the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112 (2007); *see also Patton v. Mullin*, 425 F.3d 788, 800 (10th Cir. 2005) (noting that "in a habeas proceeding, any trial errors will be deemed harmless unless they have a substantial and injurious impact or influence in determining the verdict").

In this case, Applicant has not demonstrated that the trial court's evidentiary ruling admitting the photograph of the digital scale rendered his trial, as a whole, fundamentally unfair.   The Colorado Court of Appeals explained, and I agree, that the photograph of the scale was generally relevant to the charge of possession of cocaine with intent to distribute, and was not unduly prejudicial or inflammatory. *People v. Martinez*, 03CA1307 at 7.  The jury was instructed that, under Colorado law, the elements of the crime of possession with intent to distribute a controlled substance are (1) that the defendant, (2) in the state of Colorado, on or about August 23, 2002, (3) knowingly, (4) possessed with intent to distribute, (5) the controlled substance, cocaine.  *See* Trial Court Record, p. 122.  When Applicant was arrested, he was in possession of 8.5 ounces of cocaine, drug paraphernalia, a gun, and $3,698.28 in cash.  *People v. Martinez*, 03CA1307 at 1.   This evidence, standing alone, would be sufficient to allow a reasonable jury to convict Applicant of possession with intent to distribute under Colorado law.

15

I find that the photograph of the digital scale was no more than cumulative evidence and it is improbable that such cumulative evidence negatively impacted Applicant at trial. Therefore, the trial court's admission of the challenged evidence did not render Applicant's trial fundamentally unfair in violation of due process. *See, e.g., Willingham v. Mullin*, 296 F.3d 917, 928-29 (10th Cir. 2002) (according deference to state court's admission of objectionable photographs as relevant, despite habeas petitioner's argument that photographs were unduly prejudicial and concluding that petitioner failed to demonstrate a due process violation).

The state court's determination that the evidence was admissible and not prejudicial is not contrary to, or an unreasonable application of Supreme Court law, nor is it an unreasonable determination of the facts. Applicant is not entitled to federal habeas relief on this claim.

B.     Taser Unit

Applicant asserts that "the trial court allowed the State to keep a taser unit on Mr. Martinez during the trial, in full view of the jurors." Application at 26. He asserts that this was prejudicial and unnecessary because he "exhibited no behaviors in the court room that warranted the taser unit." *Id.*

> Defendant next contends the trial court erred in restraining him with a taser unit during trial because the restraint diluted his presumption of innocence and denied him a fair trial. We disagree.
>
> In *Deck v. Missouri*, ___ U.S. ___, 125 S. Ct. 2007, 161 L.Ed.2d 953 (2005), the Court recognized that the right of a defendant to remain free of physical restraints in the presence of the jury may be "overcome in a particular instance by essential state interests such as physical security, escape prevention, or courtroom decorum." *Deck v. Missouri*, *supra,* ___ U.S. at ___, 125 S. Ct. at 2012. The Court recognized that the trial court has discretion in determining whether restraints are necessary. *Deck v. Missouri*, *supra*.
>
> Similarly, under Colorado law the trial court has discretion to determine whether restraints are appropriate, and its determination will not be reversed absent an abuse of discretion. *People v. Melanson*, 937 P.2d 826 (Colo. App. 1996) (defendant restrained with a taser unit based solely on history of violent crimes). Use of restraints during a jury trial constitutes reversible error only when the restraint is both unnecessary and prejudicial. *People v. James*, 40 P.3d 36 (Colo. App. 2001).

16

Here, the record establishes that following the first day of trial an incident occurred outside of the courtroom in which officers subdued defendant using a taser. When evidence of the incident was presented to the trial court in seven officers' reports, defendant did not contest what had occurred.

Based on this incident, a deputy sheriff recommended that the defendant wear a taser unit during trial. The trial court alerted defense counsel that it was inclined to follow this recommendation. At that time, defendant did not object. Thus, we conclude the record establishes necessity for restraining defendant with the taser unit.

Defendant objected to wearing the taser unit twice after the initial decision. He first asserted that having to stand when the jury left the courtroom made the unit more visible. The trial court offered the solution that neither defendant nor the attorneys had to stand when the jury entered or exited the courtroom. Defendant did not renew his objection after the court offered this solution.

Defendant next objected to wearing the taser unit when he was about to take the stand and testify. The trial court proposed a solution of pulling out his shirt to make the unit less visible. Again, defendant did not challenge the solution offered by the court.

Even assuming the objections were properly preserved, we discern nothing in the record to persuade us that the trial court's solutions were not reasonable under the circumstances.

Accordingly, we discern no abuse of discretion in the trial court's decision to restrain defendant with a taser unit during trial.

*People v. Martinez*, 03CA1307 at 10-12.

While a defendant enjoys the "right to appear before the jury unfettered from physical restraints," this right is not unqualified. *United States v. Hack*, 782 F.2d 862, 867 (10th Cir. 1986). In *Deck v. Missouri*, 544 U.S. 622 (2005), the Supreme Court held that the Due Process clause prohibits the routine use of physical restraints visible to the jury during both the guilt phase and penalty phase of a capital trial. *Id.* at 635. The Court based its decision on three fundamental principles: (1) the defendant is presumed innocent; (2) the defendant must have access to counsel; and (3) the trial court must seek to maintain a judicial process that is a dignified process. *Id.* at 630-32. Therefore, because of the presumed prejudice of visible physical restraints, they may only be used when they serve an "essential" interest "specific" to a particular case. *Id.* at 628. Security

needs or escape risks "related to the defendant on trial" constitute such an interest. *Id.* at 633. A trial court retains the discretion to take measures to maintain order and security within its courtroom. *See Deck*, 544 U.S. at 632 (recognizing the "need to give trial courts latitude in making individualized security determinations"); *Hack*, 782 F.2d at 867 (acknowledging the significant deference given to the trial court in determining whether security measures are necessary regarding a particular defendant). Finally, in *United States v. Wardell*, the Tenth Circuit noted that the courts "should not 'presume prejudice' when there is no evidence that the jury noticed the [restraint device]." 591 F.3d 1279, 1294 (10th Cir. 2009) (§ 2255 proceeding) (quoting *United States v. McKissick*, 204 F.3d 1282, 1299 (10th Cir. 2000)).

On May 20, 2003, an incident occurred between Applicant and correctional officers that precipitated the need for Applicant to wear a taser unit during trial. This incident is memorialized in seven incident reports written by correctional officers located in the trial court record. *See* Trial Court Record, p.166-73. In short, the incident reports demonstrate that, after court on May 20, 2003, a correctional officer instructed Applicant to remove his civilian clothes and change into his inmate uniform so that he could be transferred to the Denver City Jail for the night. *Id.* Applicant refused to change into his inmate uniform and became verbally abusive of the correctional officers. *Id.* The correctional officers assembled an extraction team, threatened Applicant with the use of a taser, and provided him several opportunities to change into his uniform. *Id.* Applicant repeatedly refused, and the correctional officers used a taser and handcuffs in order to extract him from the cell and transport him to Denver City Jail. *Id.*

The trial court was informed of the incident on May 21, 2003. *See* Trial Court Transcript, Vol. Five, p. 5. The trial court informed Applicant that the Denver Sheriff had recommended that Applicant wear a taser unit during trial, and the trial court was inclined to follow this recommendation. *Id.* Applicant did not dispute that an incident had occurred the previous evening, and he did not object to wearing a taser at that time. *Id.* at 5-6. As set forth by the appellate court,

18

Applicant later objected to the taser unit on two occasions, arguing that it would prejudice him in the eyes of the jury. The trial court responded by allowing Applicant to remain seated when the jury left, and instructing him to pull his shirt over the taser so that it was not visible. *See* Trial Court Transcript, Vol. Five, p. 86-87, 265-66.

In the Application, Applicant does not dispute the essential facts of the May 20, 2003, incident. Instead, he explains that on May 20, 2003, he was

> very upset about the results [of the second day of trial] and working with counsel Mr. Martinez did not want. Mr. Martinez was taken from the court room and ordered to immediately change from his street clothes back into prison garb. Mr. Martinez wanted a few moments to collect himself, but the officers wanted Mr. Martinez to respond immediately. A conflict ensued, which resulted in Mr. Martinez disobeying officers' orders and Mr. Martinez was tazed with a taser.

Application at 25.

Here, the trial court found that the taser unit was necessary based upon the recommendation of the sheriff and due to the fact that a violent incident between Applicant and correctional officers had occurred. It is also important to note that, at the time of his arrest, Applicant was wanted on a warrant for escape. *People v. Martinez*, 03CA1307 at 2. Perhaps more importantly, in this case, Applicant was charged with first degree assault on a peace officer, after he pointed a gun at a police officer during a pursuit. Answer at 4. The nature of Applicant's offenses, and the fact that Applicant had repeatedly disobeyed the directions of correctional officers, suggested the need for heightened security during the trial, when Applicant was in continuing contact with correctional officers. Furthermore, on two occasions, the trial court minimized the risk of prejudice by instructing both counsel and Applicant to remain seated in the presence of the jury, and by allowing Applicant to pull his shirt over the taser unit in order to conceal it. While Applicant asserts that the taser unit was "visible to the jury", he identifies nothing in the record that would indicate that a juror actually observed the taser unit. Application at 26. The Court will not presume prejudice to Applicant in the absence of any evidence indicating that the jury

observed the taser.  *Wardell*, 591 F.3d at 1294.

Based upon the heightened security concerns identified above, and the precautions taken by the trial judge to minimize the visibility of the taser unit, I find that it was not unreasonable for the trial court to order Applicant to wear a taser unit during trial.  *See United States v. Apodaca*, 843 F.2d 421, 431 (10th Cir. 1988) (affirming the use of a leg chain when the judge articulated safety reasons and took "precautions to ensure that any prejudicial effect of the physical restraint was minimized");  *United States v. Fields*, 483 F.3d 313, 357 (5th Cir. 2007) (finding no abuse of discretion by the district court in requiring the use of a stun-belt restraint on a pro se defendant when the defendant was found to have a history of prison escapes and violence and when the district court minimized the risk of prejudice by permitting the defendant to conceal the stun belt and requiring both sides to remain seated before the jury);  *United States v. Brooks*, 125 F.3d 484, 502 (7th Cir. 1997) (approving, *inter alia*, the use of stun belts because restraint was necessary and the stun belt, which was hidden under clothes, was method of restraint that minimized risk of prejudice).

Accordingly, I find that the decision of the appellate court with respect to the taser unit was not contrary to or an unreasonable application of established Supreme Court precedent.  Therefore, Applicant is not entitled to federal habeas relief on this claim.

## IV.    Conclusion

**THEREFORE, IT IS ORDERED** as follows:

1.    That the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C.  § 2254 [#1] filed by the Applicant, Raymond Martinez, is denied;

2.    That no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right; and

3.    That this case is dismissed with prejudice.

Dated April 22, 2011, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge